Below is an opinion of the court.

*Teresa H. Pearson*
_____
TERESA H. PEARSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re

Roy MacMillan,

        Debtor.

Case No. 23-30159-thp11

OPINION[1]

      This matter came before the court for determination of whether debtor may pay a general unsecured creditor as a critical vendor pursuant to 11 U.S.C. §§ 105 and 363(b). For the reasons set forth below, the court holds that the Bankruptcy Code does not authorize this proposed payment.

### Jurisdiction

      This court has jurisdiction of this case under 28 U.S.C. § 1334, and authority to decide this issue as a core proceeding under 28 U.S.C. § 157(b)(2).

### Facts

      The relevant facts are undisputed. Debtor filed his voluntary chapter 11 petition under chapter 11 on January 25, 2023. There are about a dozen general unsecured creditors in this case.

---

[1] The active judges of the district approve this opinion.

On his real property, debtor grows hay, which needs to be cut from time to time. Prepetition, John Keicher Ranch & Farm LLC ("Keicher") cut debtor's hay. Keicher filed a general unsecured claim for $12,021 for its unpaid prepetition services. Postpetition, Keicher refuses to cut debtor's hay unless its prepetition claim is paid. Debtor has been unable to locate anyone else to cut his hay. Debtor is concerned that if he is not able to pay Keicher, the hay will not be cut and will go to waste, the estate will lose value, and he will have to pay for additional feed for his cows.

## **Legal Analysis**

In his motion, debtor essentially seeks to pay one general unsecured creditor in full immediately—other unsecured creditors, who may or may not be paid in full, would wait for payment until after a plan is confirmed. Under binding authority in the Ninth Circuit, this court does not have the power to grant debtor's request. In *B & W*, the Ninth Circuit Court of Appeals considered whether the claims of certain unsecured creditors could be elevated over other creditors of the same class and concluded that "[t]his is not a power given the courts by the 1978 Act."[2]

Debtor asserts that this court has authority pursuant to 11 U.S.C. §§ 105 and 363(b) to pay Keicher as a critical vendor, relying on several cases from outside the Ninth Circuit. For the reasons set forth below, this court cannot rely on that authority to grant debtor's motion.

This court has not located any other authority that it finds persuasive that would allow the court to pay the prepetition claim of one general unsecured creditor in full immediately, while all the other general unsecured creditors wait for confirmation of a plan or other proceedings in this case.

---

[2] *B & W Enters., Inc. v. Goodman Oil Co. (In re B & W Enters, Inc.)*, 713 F.2d 534, 537 (9th Cir. 1983).

**A.** **This court cannot rely on authority that is based on the Necessity of Payment Rule or the Six Months Rule to support payment of a critical vendor in this case.**

Debtor relies on *Ionosphere* and *CoServ*[3] to support his request to pay Keicher. In *Ionosphere*, the bankruptcy court in the Southern District of New York said that, pursuant to 11 U.S.C. §§ 105 and 363(b), a bankruptcy court has authority to authorize payment of a prepetition debt when "payment is needed to facilitate the rehabilitation of the debtor. . . ."[4] The bankruptcy court in the Northern District of Texas expressly held in *CoServ* that 11 U.S.C. § 363(b) did not authorize payment of prepetition claims.[5] However, the *CoServ* court said that, pursuant to 11 U.S.C. §§ 105 and 1107(a), a bankruptcy court has authority to authorize payment of a prepetition debt "in aid of preservation or enhancement of the estate."[6]

The decisions in both *Ionosphere* and *CoServ* are based expressly on the "Necessity of Payment Rule" (also known as the "Doctrine of Necessity") and the "Six Months Rule."[7] These rules arose historically in railroad receiverships. The Necessity of Payment Rule "may be invoked by trustees as justification for the payment of pre-petition debts paid under duress to secure continued supplies or services essential to the continued operation of the railroad."[8] The Six Months Rule is an equitable rule allowing a receiver to pay expenses which were necessary for the continued operation of the railroad, and were incurred in the six months before the receivership proceeding commenced.[9] It is not clear whether the Necessity of Payment Rule survived the adoption of the Bankruptcy Code.[10] The Six Months Rule was incorporated into the Bankruptcy Code in 11 U.S.C. § 1171(b), which applies in railroad cases.[11]

---

[3] *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989); *In re CoServ, L.L.C.*, 273 B.R. 487 (Bankr. N.D. Tex. 2002).
[4] *Ionosphere Clubs*, 98 B.R. at 175-76.
[5] *CoServ*, 273 B.R. at 493.
[6] *CoServ*, 273 B.R. at 496-97.
[7] *Ionosphere*, 98 B.R. at 175-76; *CoServ*, 273 B.R. at 492-93, 496-97.
[8] *B & W Enters.*, 713 F.2d at 537.
[9] *B & W*, 713 F.2d at 536.
[10] *B & W*, 713 F.2d at 537.
[11] *B & W*, 713 F.2d at 536-37.

The Ninth Circuit Court of Appeals squarely held in *B & W* that the Necessity of Payment Rule and the Six Months Rule cannot be applied to cases other than railroad cases.[12] This debtor is an individual, not a railroad. Thus, this court cannot rely on the Necessity of Payment Rule or the Six Months Rule (or any cases from other jurisdictions fundamentally based on those rules) to authorize debtor to pay Keicher in this case.

**B.** **The court cannot rely on the language of 11 U.S.C. § 363(b) and general authority under that section to authorize payment of a critical vendor's prepetition claim.**

Debtor also relies on the language of 11 U.S.C. § 363(b) and *Enron*[13] to support his request to pay Keicher. Section 363(b) allows a debtor to use, sell, or lease property of the estate outside of the ordinary course of business after notice and a hearing. It does not say that the court may authorize use of property in contravention of other Bankruptcy Code requirements. "The general rule is that a distribution on pre-petition debt in a Chapter 11 case should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstances."[14] This court agrees with the court in *CoServ* to the extent that it rejected 11 U.S.C. § 363(b) as a basis to pay critical vendor claims, because "the entire scheme of the Bankruptcy Code favors equal (and simultaneous) treatment of equal allowed claims" and "the goal of equal treatment in liquidation or under a plan suggests Congress would not countenance use by a general unsecured prepetition creditor of a 'critical' position to force payment of a prepetition debt."[15] Even the Seventh Circuit Court of Appeals, in *Kmart*, recognized that "it is prudent to read, and use, § 363(b)(1) to do the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code."[16]

---

[12] *B & W*, 713 F.2d at 537.

[13] *Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27-28 (S.D.N.Y. 2005).

[14] *Rosenberg Real Estate Equity Fund III v. Air Beds, Inc. (In re Air Beds, Inc.)*, 92 B.R. 419, 422 (9th Cir. BAP 1988).

[15] *CoServ*, 273 B.R. at 494.

[16] *In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004). In *Kmart*, the Court of Appeals did not decide whether section 363(b) allowed payment of critical vendors with pre-petition debts, holding that the order it was reviewing that allowed such payments was "unsound no matter how one reads § 363(b)(1)." *Id.*

Debtor cites *Enron* for the proposition that a debtor must have a good business reason to use assets outside of the ordinary course of business.[17]  *Enron* did not address the payment of critical vendors or prepetition claims at all—the case involved the post-petition retention of professionals to represent debtor's employees in various governmental investigations.  While this court does not disagree that a debtor must have a good business reason to use assets outside of the ordinary course of business under 11 U.S.C. § 363(b),[18] a good business reason alone is not sufficient to grant a motion for immediate payment of the prepetition claim of one general unsecured creditor while the other general unsecured creditors must wait their turn for payment after a plan is confirmed.

### C. The court cannot rely on generic authority under 11 U.S.C. § 105 to pay a critical vendor.

Debtor cites *Quality Interiors* for the proposition that "[a] general practice has developed, however, where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105…."[19]  *Quality Interiors* was decided in 1991, well before the Supreme Court made clear in *Law v. Siegel* that 11 U.S.C. § 105 may only be used within the confines of the Bankruptcy Code and may not be used to contravene the Code's specific statutory provisions.[20]  As the Seventh Circuit Court of Appeals said in *Kmart*, 11 U.S.C. § 105 does not give the bankruptcy courts discretion to set aside the Bankruptcy Code's requirements for priority and distributions.[21]  "Every circuit that has considered the question has held that [11 U.S.C. § 105] does not allow a bankruptcy judge to authorize full payment of any unsecured debt, unless all unsecured creditors in the class are paid in full."[22]

---

[17] *Enron*, 335 B.R. at 27-28 (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).
[18] The Ninth Circuit Bankruptcy Appellate Panel has also held that there must be a valid business justification for the use of section 363(b).  *204 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653, 659 (9th Cir. BAP 1996).
[19] *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991).
[20] *Law v. Siegel*, 571 U.S. 415, 420-21, 134 S.Ct. 1188, 1194-95 (2014).
[21] *Kmart Corp.*, 359 F.3d at 871.
[22] *Kmart Corp.*, 359 F.3d at 871 (citing, among other cases, the Ninth Circuit Court of Appeals' decision in *B & W*.  Although the Court of Appeals in *B & W* did not cite section 105, it did address, and reject, the argument that the bankruptcy courts have the general equitable powers necessary to overrule the priority scheme set forth in the Bankruptcy Code.  *B & W*, 713 F.2d at

**D.    The court cannot rely on cases that provide for payment of priority wage claims.**

Debtor asserts that his request to pay Keicher complies with the stringent requirements of *Tusa-Expo*,[23] and therefore should be allowed. *Tusa-Expo* is distinguishable from this case. *Tusa-Expo* involved three joint chapter 11 debtors' request for first day orders allowing the payment of wages, salaries, health insurance benefits, and other compensation that was entitled to priority under 11 U.S.C. § 507(a)(4) and (5). *Tusa-Expo* did not involve the payment of some, but not all, general unsecured creditors as critical vendors.

There are good reasons under the Bankruptcy Code to treat the payment of prepetition priority employee obligations differently than allegedly critical general unsecured claims. First, the Bankruptcy Code requires the arrangement for payment in full of priority prepetition employee obligations up to the statutory amounts as a condition of plan confirmation.[24] There is no similar requirement for payment of general unsecured claims. Second, parties seeking first day orders to pay priority employee obligations typically seek to pay all similarly situated creditors the same—they propose to pay all employee creditors in full up to the statutory priority amount, rather than picking and choosing among employees. This is distinguishable from critical vendors, who are chosen to receive immediate full payment while other general unsecured creditors must wait and may not receive full payment. Third, when requesting first day orders to pay prepetition priority employee obligations, debtors typically provide an evidentiary record to establish that higher priority claims will not be jeopardized by such payment. In a voluntary chapter 11 case of a business entity (the type of case where such orders are usually requested), the higher priority claims are typically only those of administrative

---

537 (analyzing 11 U.S.C. § 510, not § 105). The Court of Appeals in *B & W* noted "[t]here is no indication that Congress intended the courts to fashion their own rules of super-priorities within any given priority class." *Id.*

[23] *In re Tusa-Expo Holdings, Inc.*, 2008 WL 4857954, *2-4 (Bankr. N.D. Tex. Nov. 7, 2008).

[24] 11 U.S.C. § 1129(a)(9)(B). This rule applies unless the claimants have expressly agreed to contrary treatment.

claimants,[25] so this involves making a factual showing that the case will not be administratively insolvent.[26]

Here, debtor is not seeking to pay a group of priority claims in full. Instead, he is seeking to pay one general unsecured creditor in full immediately, and not pay all the others until after his plan is confirmed. While debtor asserts that he currently expects to pay all unsecured creditors in full, he provides no evidence to support his ability to propose a plan to do so. Indeed, on his schedules, debtor's liabilities far exceed his assets.

E.    **The court has not located any other authority that would allow payment of Keicher.**

This court has searched for any other binding or persuasive authority that would provide a principled basis to authorize the proposed payment to Keicher while still complying with the requirements of the Bankruptcy Code. This search has been unsuccessful.

At most, this court has located only references in a Supreme Court case and a Ninth Circuit case to other courts having approved critical-vendor payments. For example, in *Jevic*, the Supreme Court has recognized that some courts have approved "'critical vendor' orders that allow payment of essential suppliers' prepetition invoices."[27] This comment was not an essential part of the Supreme Court's decision, which did not involve critical vendor motions. Instead, in *Jevic*, the Supreme Court held that a bankruptcy court could not authorize a structured dismissal that did not follow the Bankruptcy Court's priority rules for distribution, without the consent of affected parties.[28]

In *Adams Apple*, the Ninth Circuit Court of Appeals also recognized that some courts have approved payment of prepetition debts when necessary for rehabilitation of the debtor, including "debts due to providers of unique and irreplaceable supplies . . . ."[29] However,

---

[25] The priority rights of holders of domestic support obligations and "gap" claimants in involuntary bankruptcy cases usually would not apply in these cases. 11 U.S.C. § 507(a)(1) and (3).

[26] *See, e.g., In re Ecosmart, Inc.*, 2015 WL 9274245, *2 (Bankr. C.D. Cal. Dec. 18, 2015).

[27] *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468, 137 S.Ct. 973, 985 (2017).

[28] *Jevic*, 580 U.S. at 454-55, 137 S.Ct. at 978.

[29] *Burchinal v. Central Washington Bank* (*In re Adams Apple, Inc.*), 829 F.2d 1484, 1490 (9th Cir. 1987).

the panel in *Adams Apple* did not address the Court of Appeals' previous holding to the contrary in *B & W*. This court agrees with the bankruptcy court in Montana, who analyzed this language in *Adams Apple*, and found it to be unsupported dicta "without precedential authority and … plainly contrary to the recent admonition of the Supreme Court."[30]

## <u>Conclusion</u>

For the reasons set forth above, the court cannot authorize debtor's payment of Keicher as a critical vendor. The court will issue an order on the motion consistent with this opinion.

### #

---

[30] *In re Timberhouse Post & Beam, Ltd.*, 196 B.R. 547, 551 (Bankr. D. Mont. 1996).